1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| JESSE D. RINE, ) | NO. CV 11-07894 AGR |
| Plaintiff, ) | |
| v. ) | |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. ) | |

18      Plaintiff Jesse D. Rine filed this action on September 23, 2011.  Pursuant to

19   28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge

20   on October 27, 2011 and April 20, 2012.  (Dkt. Nos. 6, 14.)  On July 9, 2012, the

21   parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The

22   court has taken the matter under submission without oral argument.

23      Having reviewed the entire file, the court remands this matter to the

24   Commissioner for proceedings consistent with this Opinion.

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

## PROCEDURAL BACKGROUND

On January 15, 2009, Rine filed an application for disability insurance benefits.  Administrative Record ("AR") 18, 53.  On January 23, 2009, Rine filed an application for supplemental security income.  AR 18, 54.  In both applications, he alleged a disability onset date of December 6, 2006.  AR 18.  The applications were denied initially and on reconsideration.  AR 18, 55-56.  Rine requested a hearing before an Administrative Law Judge ("ALJ").  AR 77-78.  On November 9, 2010, the ALJ conducted a hearing at which Rine, his mother, and a vocational expert testified.  AR 30-52.  On December 2, 2010, the ALJ issued a decision denying benefits.  AR 18-24.  On July 27, 2011, the Appeals Counsel denied Rine's request for review.  AR 1-3.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (*per curiam*); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2

1

2

### III.

### DISCUSSION

3

#### A.   Disability

4

A person qualifies as disabled, and thereby eligible for such benefits, "only

5

if his physical or mental impairment or impairments are of such severity that he is

6

not only unable to do his previous work but cannot, considering his age,

7

education, and work experience, engage in any other kind of substantial gainful

8

work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

9

21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks

10

omitted).

11

#### B.   The ALJ's Findings

12

The ALJ found that Rine has the severe impairments of bipolar disorder,

13

NOS and polysubstance/alcohol abuse.  AR 20.  Rine's mental impairment does

14

not meet or equal a listing 12.04.  His drug/alcohol abuse meets listing 12.09, but

15

the drug/alcohol addiction is material to a finding of disability.  AR 24.  Rine is

16

ineligible for benefits based on his drug/alcohol addiction.  *Id.*  Rine has the

17

residual functional capacity ("RFC") to perform a full range of work at all

18

exertional levels, except he has mild to moderate restriction of activities of daily

19

living, mild to moderate difficulties in maintaining social functioning, and mild to

20

moderate difficulties in maintaining concentration, persistence and pace, and no

21

episodes of decompensation.  AR 22.  Absent drug/alcohol abuse, he can

22

perform basic unskilled work.  *Id.*  He can perform his past relevant work as a

23

truck driver, maintenance laborer.  AR 23.  There are also other jobs that exist in

24

significant numbers in the national economy that he can perform.  *Id.*

25

#### C.   Treating Psychiatrist

26

Rine contends the ALJ erred by failing to give specific and legitimate

27

reasons for rejecting the opinion of his treating psychiatrist, Dr. Aquino.

28

3

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

In a letter dated December 23, 2009, Dr. Aquino stated that Rine "is totally disabled without consideration of any past or present drug and/or alcohol use." AR 340. "Drug and/or alcohol use is not a material cause of this individual's disability." *Id.* In a letter dated August 3, 2010, Dr. Aquino stated that Rine "exhibits emotional lability, irritability, rage, depression, self-isolation, suicidal and homicidal thoughts, and passive paranoia." AR 428. She diagnosed Rine with mood disorder NOS, with a Global Assessment of Functioning ("GAF") of 45.[1] *Id.* She wrote that Rine "is effectively unable to interact appropriately with the public," "is moderately limited in his ability to ask simple questions or request assistance," and "would likely miss more than three days of work a month." *Id.* She opined

---

[1] A GAF score between 41 and 50 indicates serious symptoms (*e.g.*, suicidal ideation, obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM IV TR").

1    that Rine's symptoms and functional limitations were expected to last at least a

2    year. *Id.*

3         The ALJ considered Dr. Aquino's letters and gave her assessments "no

4    weight" because they "are not supported by the objective findings or the evidence

5    of record."  AR 21-22.  The ALJ noted that the record does not indicate that Rine

6    has stopped abusing drugs/alcohol.  AR 22, 353, 356-57, 365, 390.  He noted

7    that when Rine was compliant with his medications and not on drugs/alcohol, he

8    did better.  AR 22, 244, 246, 348.  Rine admitted that his alcohol and marijuana

9    intake may have contributed to his "increased agitation," which led to his

10   hospitalization in March 2010.  AR 357.

11        A treating physician's opinion as to the ultimate determination of disability

12   is not binding on an ALJ.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

13   The existence of disability "is an administrative determination of how an

14   impairment, in relation to education, age, technological, economic, and social

15   factors, affects ability to engage in gainful activity" and is reserved to the

16   Commissioner.  *Id.*

17        An ALJ may discount a treating physician's unsupported opinion.  *Orn*, 495

18   F.3d at 631-32; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th

19   Cir. 2004) (ALJ did not err in rejecting treating physician's opinion unsupported by

20   objective medical findings).

21        Here, however, Dr. Aquino's opinion is not unsupported.  The ALJ gave

22   "significant weight" to the opinion of the consultative examining psychiatrist, Dr.

23   Daigle, who examined Rine on May 30, 2009.  AR 22, 288.  Dr. Daigle's

24   prognosis was that with treatment and medication, Rine "could settle down and

25   be employable but probably not for the next 6 months or longer."[2]  AR 292.  Rine

26   reported to Dr. Daigle that he drank heavily from ages 18-26, but he does not

27

28        [2]  The Commissioner incorrectly argues that Dr. Daigle concluded that Rine
     "would be employable in six months."  JS 14.

1   drink much now.  AR 288, 290.  Rine also denied smoking and drug abuse.  AR

2   290.  The mental status examination revealed that Rine had coherent and

3   organized thought processes, relevant and non-delusional thought content, no

4   suicidal, homicidal, or paranoid ideation, an anxious and depressed mood, an

5   agitated and labial affect, slightly pressured speech, alert and oriented intellectual

6   functioning in three spheres, and limited insight and judgment regarding current

7   problems.  AR 291-92.  Dr. Daigle diagnosed Rine with probable bipolar disorder,

8   partially treated, and found a GAF of 55.[3]  AR 292.  He found that Rine was not

9   significantly limited in his ability to understand, remember, and carry out simple

10  one or two-step job instructions, slightly limited in his ability to follow detailed and

11  complex instructions, slightly to moderately limited in his ability to relate and

12  interact with supervisors, coworkers, and the public, moderately limited in his

13  ability to maintain concentration, attention, persistence and pace, slightly to

14  moderately limited in his ability to associate with day-to-day work activity, and

15  moderately limited in his ability to adapt to the stresses common to a normal work

16  environment.  AR 292-93.  The ALJ found that Dr. Daigle's conclusions were

17  "consistent with the objective findings and the evidence of record."  AR 22.

18       Given that Dr. Daigle opined that Rine would not be employable for six

19  months or longer, Dr. Aquino's opinion has support in the record.  (*See also* Dr.

20  Nehorayan's opinion, discussed below.)  The ALJ failed to set forth specific and

21  legitimate reasons for rejecting Dr. Aquino's opinion.  *See Widmark v. Barnhart*,

22  454 F.3d 1063, 1069 (9th Cir. 2006).

23       **D.  Independent Medical Evaluation**

24       Rine contends the ALJ erred by failing to give specific and legitimate

25

26  _____

27       [3]  A GAF of 51-60 indicates "[m]oderate symptoms (*e.g.*, flat affect and
    circumstantial speech, occasional panic attacks) OR moderate difficulty in social,
28  occupational, or school functioning (*e.g.*, few friends, conflicts with peers or
    co-workers)."  DSM IV TR.

1    reasons for rejecting the opinion of Dr. Nehorayan, who performed an

2    independent medical evaluation.

3         An examining physician's opinion constitutes substantial evidence when,

4    as here, it is based on independent clinical findings.  *Orn*, 495 F.3d at 631.

5         Dr. Nehorayan examined Rine on July 29, 2010.  AR 538-49.  The mental

6    status examination showed that Rine was slightly to moderately restless and

7    fidgety, his anxiety was moderate to marked, he was slightly irritable and

8    paranoid in his thought content, he did not exhibit any illusions or auditory or

9    visual hallucinations, he did not show any impairment in level of consciousness,

10   he was alert and oriented to person, place, and time, he showed some

11   impairment in managing daily living activities, and he was circumstantial in his

12   thought processes.  AR 544-55.  Dr. Nehorayan also reviewed Rine's mmedical-

13   psychiatric history and performed psychological tests.  AR 545.  The results of the

14   psychological tests indicated Rine experienced a severe amount of depression,

15   anxiety, and hopelessness.  AR 546.  Dr. Nehorayan diagnosed Rine with bipolar

16   affective disorder not otherwise specified with noted history of poor impulse

17   control features as well as psychotic features, attention deficit hyperactivity

18   disorder with childhood onset, learning disorder, notable history of conduct

19   disorder adolescent onset, and history of polysubstance abuse including alcohol

20   as well as rule out canaboid abuse.  AR 546.  Rine's GAF was 38 and he is

21   "permanently mentally disabled."[4]  AR 546, 548.  Dr. Nehorayan concluded that

22   due to Rine's impairments, he "will not only be unable to return back to the open

23   labor market[,] but has not been able to do so since approximately 2006 when he

24   was put on State Disability."  AR 547-48.

25   _____

26        [4]  A GAF of 31 to 40 indicates some impairment in reality testing or
     communication (speech is at times illogical, obscure or irrelevant) OR major
27   impairment in several areas, such as work or school, family relations, judgment,
     thinking or mood (*e.g.*, depressed man avoids friends, neglects family, and is
28   unable to work . . .).  DSM IV TR.

1        The ALJ considered Dr. Nehorayan's opinion and gave it "no weight"

2 because it was "not consistent with the objective findings or the evidence of

3 record." AR 22.

4        As discussed above, Dr. Nehorayan's opinion has support in the record

5 from Dr. Aquino and Dr. Daigle, who opined that Rine was not employable for six

6 months or longer. Because the ALJ failed to set forth specific and legitimate

7 reasons for rejecting Dr. Nehorayan's opinion, his opinion must be credited on

8 remand. *See Widmark*, 454 F.3d at 1069.

9     **E. Credibility**

10        Rine contends the ALJ improperly discounted his subjective testimony.

11        "To determine whether a claimant's testimony regarding subjective pain or

12 symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

13 *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

14        At step one, "the ALJ must determine whether the claimant has presented

15 objective medical evidence of an underlying impairment 'which could reasonably

16 be expected to produce the pain or other symptoms alleged.'" *Id.* (citing *Bunnell*

17 *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that

18 Rine's "medically determinable impairment could reasonably be expected to

19 cause the alleged symptoms." AR 23.

20        "Second, if the claimant meets this first test, and there is no evidense of

21 malingering, 'the ALJ can reject the claimant's testimony about the severity of [the

22 claimant's] symptoms only by offering specific, clear and convincing reasons for

23 doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a

24 credibility determination, the ALJ 'must specifically identify what testimony is

25 credible and what testimony undermines the claimant's complaints.'" *Greger v.*

26 *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "If the ALJ's

27 credibility finding is supported by substantial evidence in the record, we may not

28

1
2
engage in second-guessing." *Thomas*, 278 F.3d at 958-59 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

3
4
5
6
Here, the ALJ made no finding of malingering.  *See generally* AR 18-24. He found that Rine's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 23.

7
8
9
10
11
12
Rine testifbed that he was fired from numerous jobs because he was violent.  AR 33-40.  He hears voices, has thoughts of hurting people, and has paranoia.  AR 40-41.  His grandmother has a restraining order against him.  AR 41.  In his Function Report – Adult, Rine stated that he does chores, watches television, takes walks, sees his counselor, prepares his own meals, drives a car, lifts weights, goes to church, shops, and is anti-social.  AR 176-81.

13
14
15
16
17
The ALJ discounted Rine's credibility for at least four reasons:  (1) Rine was vague regarding his drug/alcohol abuse; (2) Rine showed no signs of physical or mental impairment at the hearing; (3) Rine's daily activities were inconsistent with his allegations; and (4) Rine "appears to be benefit-seeking." AR 23.

18
19
20
21
22
23
24
The ALJ cited Rine's lack of candor about the extent and impact of his drug/alcohol abuse.  AR 23.  The record shows a long history of drug/alcohol abuse.  AR 22, 353, 356-57, 365, 390.  During his examination with Dr. Daigle, he denied smoking, drug abuse, or drinking since 2006.  AR 290.  Dr. Nehorayan noted that the records indicate alcohol and canaboid abuse, yet Rine denied such use.  AR 548.  An ALJ may consider inconsistent statements about substance abuse.  *Thomas*, 278 F.3d at 958-59.

25
26
27
The ALJ properly considered his personal observations of Rine at the hearing as part of the overall credibility evaluation, although the ALJ cannot rely on this reason alone.  *Orn*, 495 F.3d at 639; *Drouin*, 966 F.2d at 1259.

28

1      The ALJ cited inconsistencies between Rine's statements and daily

2  activities.  The ALJ noted that Rine's activities of living in an apartment with his

3  mother, taking care of his personal needs, doing household chores, watching

4  television, taking walks, preparing meals, driving his car, attending church

5  services, and shopping were inconsistent with Rine's statements that he mostly

6  stays home, hears voices, and thinks about hurting people.  AR 23, 41-43, 176-

7  82, 290.  Rine argues that the fact that he could perform these daily activities was

8  insufficient to show that he could function in a work setting.  For purposes of

9  assessing Rine's credibility, however, an ALJ may properly rely on

10  inconsistencies between a claimant's statements and his daily activities.

11  *Thomas*, 278 F.3d at 958-59.

12      The ALJ noted that Rine did not appear motivated to work and appeared to

13  be benefit-seeking.  AR 23.  Rine correctly notes that every claimant who applies

14  for benefits seeks pecuniary gain, and this fact does not indicate a lack of

15  credibility.  JS 17; *see Ratto v. Sec'y, Dept. of Health & Human Servs*., 839 F.

16  Supp. 1415, 1428-29 (D. Or. 1993) ("If the desire or expectation of obtaining

17  benefits were by itself sufficient to discredit a claimant's testimony, then no

18  claimant (or their spouse, or friends, or family) would ever be found credible.").

19  Rine reported that he was "looking forward to having [the SSI] money and living

20  independently."  AR 23, 363.  To the extent the ALJ discredited Rine's testimony

21  because Rine sought benefits, that is not a valid reason.

22      Even if the ALJ erroneously relied on Rine's desire to obtain benefits,

23  remand would not necessarily be warranted.  In *Carmickle v. Comm'r of Soc.*

24  *Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two

25  of the ALJ's reasons for making an adverse credibility finding were invalid.  When

26  an ALJ provides specific reasons for discounting the claimant's credibility, the

27  question is whether the ALJ's decision remains legally valid, despite such error,

28  based on the ALJ's "remaining reasoning *and* ultimate credibility determination."

1   *Id.* at 1162 (italics in original).  In light of the ALJ's valid reasons for discounting

2   Rine's credibility, substantial evidence supported the ALJ's credibility finding.

3   *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)

4   (any error was harmless even if record did not support one of four reasons for

5   discounting claimant's testimony).  Therefore, "we may not engage in

6   second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan*, 169 F.3d at 600).

7   **F.   Lay Witness Testimony**

8   Rine contends the ALJ improperly discounted the lay witness testimony of

9   his mother, Kathleen Ann Martin.

10   "In determining whether a claimant is disabled, an ALJ must consider lay

11   witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r of*

12   *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  "When an ALJ discounts

13   the testimony of lay witnesses, 'he [or she] must give reasons that are germane

14   to each witness.' "  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694

15   (9th Cir. 2009) (citation omitted).

16   The ALJ considered the testimony of Martin and stated "she added nothing

17   of positive value."  AR 23.  Martin testified that Rine gets angry easily and he is

18   "impossible to get along with."  AR 45.  He "always gets violent and he threatens."

19   AR 46.  His grandmother has a restraining order against him.  AR 46-47.  Martin

20   testified that Rine has "serious mental problems."  AR 47.  In the Function Report

21   – Adult – Third Party, Martin reported that Rine does simple chores around the

22   house, watches television, takes care of his personal care, prepares his own

23   meals, goes for walks, drives a car, and shops, but does not like to be around

24   people because he gets paranoid or fearful.  AR 192-97.

25   Because Martin's testimony was cumulative, the ALJ properly discounted

26   her credibility.  See *Valentine*, 574 F.3d at 694 (When an ALJ has provided clear

27   and convincing reasons for rejecting a claimant's testimony, and the lay witness'

28   testimony was similar to the claimant's testimony, "it follows that the ALJ also

11

gave germane reasons for rejecting the [lay witness'] testimony.").  Substantial

evidence supports the ALJ's decision to discount Martin's lay witness testimony.

### IV.

### ORDER

IT IS HEREBY ORDERED that this matter is remanded for further

proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

Order and the Judgment herein on all parties or their counsel.

DATED: September 17, 2012

_____

ALICIA G. ROSENBERG
United States Magistrate Judge